UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOVELL RAPHAEL SMITH,

      Plaintiff,                Civil Action No. 11-14429

           v.                District Judge Victoria A. Roberts
                           Magistrate Judge R. STEVEN WHALEN

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

      Plaintiff Lovell Raphael Smith brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act.  The parties have filed cross-motions for summary judgment.  Both motions have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons discussed below, I recommend that Defendant's Motion for Summary Judgment [Doc. #11] be DENIED, and that Plaintiff's Motion for Summary Judgment [Doc. #9] be GRANTED, remanding the case for further proceedings  pursuant to the fourth sentence of 42 U.S.C. 405(g).

## PROCEDURAL HISTORY

On March 30, 2005, Brenda Smith, applied for Childhood Disability Benefits on behalf of her son, current Plaintiff, Lovell Raphael Smith, born May 18, 1987 (Tr. 56-58). Plaintiff was initially granted benefits (Tr. 23). After reaching the age of 18, Plaintiff's disability claim was reevaluated using adult criteria (Tr. 25). On April 28, 2006, the SSA determined that Plaintiff was ineligible for continued benefits[1] (Tr. 25). Administrative Law Judge ("ALJ") James N. Gramenos held a hearing on March 10, 2010 in Detroit, Michigan (Tr. 229). Plaintiff, represented by Joshua Moore, testified (Tr. 15, 232-238), as did Vocational Expert ("VE") Jennifer Turicky (Tr. 239-245). On September 24, 2010, ALJ Gramenos found that Plaintiff's disability ended on April 1, 2006 (Tr. 22). On August 17, 2011, the Appeals Council denied review (Tr. 6-9). Plaintiff filed the present action on October 7, 2011.

## BACKGROUND FACTS

Plaintiff, born May 18, 1987, was 23 at the time of the administrative decision (Tr. 56). He alleges disability as a result of complications from diabetes mellitus.

### A.      Plaintiff's Testimony

Plaintiff testified that as a result of diabetes, he experienced back and leg problems; numbness of the feet and hands; and had recently undergone cataract surgery (Tr. 233). He

---

[1]The administrative activity occurring between the time of the cessation notice and the March 10, 2010 administrative hearing is accurately summarized by ALJ Gramenos (Tr. 14-15).

added that he also experienced an acid reflux condition (Tr. 233). Plaintiff alleged that vision difficulties prevented him from working (234). He reported that he currently took insulin (Tr. 234). He reported that on a typical day, he ate breakfast, then slept for the rest of the day (Tr. 234). He alleged high blood pressure as a result of stress, but later acknowledged that he had not experienced the condition since 2007 (Tr. 237-238). He denied concentrational problems or depression (Tr. 235).

### B.    Medical Evidence

In January, 2006, Karen Koenig, M.D. conducted a consultive examination of Plaintiff (Tr. 98). She noted that Plaintiff had been hospitalized 10-15 times in the last four years for diabetic ketoacidosis and was last hospitalized in the previous month (Tr. 98). Plaintiff, currently working as a dancer/stripper, reported that he refrained from taking insulin and engaged in self-induced vomiting to keep his weight down (Tr. 98). He reported sleeping most of the day (Tr. 98). He denied a history of retinopathy, but admitted that he had received no formal diabetes education and did not test his blood sugar regularly (Tr. 98). He reported a family history of diabetes type I including a paternal grandfather who died of the disease (Tr. 99). He denied a history of nephropathy (Tr. 98). He was encouraged to comply with recommended insulin use, undergo diabetes education, and check his blood sugar level regularly (Tr. 100). In May, 2006, Plaintiff reported back and foot pain (Tr. 101, 120). He was referred to an ophthalmologist for possible diabetes-related complications (Tr. 120). The following month, he sought emergency treatment at which time his glucose level was in excess of 700 (Tr. 102). He was discharged after his glucose levels were stabilized

(Tr. 102).   In October, 2006, Plaintiff again reported back and leg pain (Tr. 118).   His

glucose level was 311 (Tr. 127).   February, 2007 treating notes state that Plaintiff continued

to be non-compliant with insulin usage (Tr. 117).   His glucose level was measured at 338 (Tr.

126).   In April, 2007, Plaintiff was advised that his failure to take medication would result

in eye changes (Tr. 116).   The same month, an ophthalmological exam found the presence

of diabetic and hypertensive retinopathy (moderate) in both eyes and a cataract on the left

(Tr. 142).   February, 2008 glucose level was measured at 391 (Tr. 124).   In June, 2009,

Plaintiff's glucose level was measured at 104 (Tr. 122).

August, 2009 eye exam notes state that Plaintiff experienced blurry vision when

attempting to read small print (Tr. 150).   In September, 2009, Plaintiff denied problems, but

treating notes state that his glucose level measured at 228 the same day (Tr. 148).

Ophthalmological  treating notes from October, 2009 suggest that Plaintiff was scheduled

for surgery on October 22, 2009, but do not include legible followup notes (Tr. 149).

January, 2010 treating notes indicate that his glucose level was 233 (Tr. 121).

### C. Vocational Expert Testimony

The ALJ posed the following set of hypothetical limitations to VE Jennifer Turicky:

I want you to assume that during a normal eight hour work period, assuming
normal breaks and meal periods during the work period the hypothetical
individual has the following specific mental and/or physical functional
capabilities and functional limitations.  As of functional capabilities of lifting
can occasionally lift and/or carry weights defined as up to one third of the
normal eight hour work period at least up to ten pounds of weight.  The
hypothetical person functionally has the capability to frequently lift and/or
carry weights defined as up to two thirds of the work period, up to at least 10
pounds of weight, functionally standing and/or walking, able to engage in the

-4-

normal positions and/or standing walking in the work place assuming normal periods of breaks for an overall total of up to at least six hours during a normal eight hour work period, sitting position, assuming normal breaks in any work setting, during any functional abilities to engage in sitting positions for periods of time of at least an overall period of six hours when performing work activity. Now, I'll eliminate from consideration jobs that would have extremes of cold, heat , wetness or humidity.  As for visual limitations, eliminate jobs that would require as a field of vision, fine visual acuity [requiring] reading a newspaper or magazine typical size of print [and] hazard in the work setting from unprotected areas of moving machinery, heights, ramps, ladders, scaffolding and on the ground level unprotected regions of holes and pits. . . . [T]he hypothetical individual can speak and understand the English language. Is able to communicate in the English language. . . . [A]re there identifiable specific unskilled job occupations in existence in the national economy that would accommodate a reduced range rather than a full range of unskilled range of sedentary work exertion?[2]

(Tr. 240-241).  In response, the VE testified that the individual could perform the sedentary work of a surveillance system monitor (1,500 positions in existence in the regional economy); information clerk (1,000); and bench assembler (1,000) (Tr. 242).

The VE stated that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT"), Selected Characteristics of Occupations, and information provided by the National Department of Labor and Michigan Department of

---

[2]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

Labor (Tr. 243). She stated that the above jobs would not permit unscheduled breaks or more than two unexcused absences in one month (Tr. 244-245).

**D.    The ALJ's Decision**

The ALJ found that Plaintiff, 23 at the time of the decision, had not engaged in past relevant work (Tr. 17). He found that Plaintiff experienced the severe impairments of "Type I insulin dependent diabetes mellitus . . . and status post extraction of left eye cataract" but that neither condition met or equaled any impairment listed in 20 CRF Part 404, Subpart P, Appendix 1 (Tr.18). The ALJ found that Plaintiff retained the following residual functional capacity ("RFC"):

> "(1) an ability to occasionally stand and/or walk, with normal breaks, for at least a period of 6 hours during a normal 8 hour work period; (2) a functional ability to engage in the sitting position for periods of time up to at least 6 hours when performing work activity; (3) lifting abilities of up to 10 pounds occasionally and up to 10 pounds of weight frequently; (4) eliminate from consideration jobs that would have extremes of cold or heat, extremes of wetness and/or humidity; (5) eliminate from consideration jobs that would require as to field of vision fine visual acuity; and (6) eliminate from consideration jobs that have hazards in the work-setting from unprotected areas of moving machinery; heights; ramps; ladders; scaffolding; and on the ground level unprotected regions of holes and pits" (Tr. 18).

Citing the VE's testimony, the ALJ found that Plaintiff could perform the jobs of bench assembler, information clerk, and surveillance system monitor (Tr. 21).

The ALJ discounted Plaintiff's allegations of disability, noting a history of poor compliance with diabetes medications (Tr. 19). The ALJ cited January, 2006 examination notes indicating that Plaintiff was working as a dancer and deliberately refrained from taking insulin to keep his weight down (Tr. 19). The ALJ noted that while Plaintiff sought

emergency treatment in June, 2006 as a result of blood sugar spikes, he was discharged in stable condition (Tr. 10).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6ᵗʰ Cir. 1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6ᵗʰ Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6ᵗʰ Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6ᵗʰ Cir. 1989).

-7-

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.  RFC / The Sit/Stand Option

Taking issue with the RFC, Plaintiff argues first that the ALJ erred by failing to specify at what interval Plaintiff needed to change positions between sitting, walking, and standing.  *Plaintiff's Brief* at 10-11, *Docket #9.*  He asserts that the ALJ's decision "indicates" that his client has "the need to stand for at least 6 hours and sit for at least 6 hours in an 8 hour workday."  *Id.* at 11.  Plaintiff contends that given the presence of an implied sit/stand option, the ALJ's failure to state how much time Plaintiff could spend sitting, walking, and standing respectively amounts to reversible error.  *Id.* at 11.

SSR 83-12 states that "[i]n some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing."  1983 WL 31253, *4.  "In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base."  *Id.*  However, as noted by Defendant, neither the RFC nor hypothetical question to the VE contained the term "sit/stand option" or synonymous language indicating the need for position changes beyond customary work breaks.  Further, the hypothetical question and RFC did not state that Plaintiff "needed" to stand or sit six hours in an eight-hour workday, but rather, that he was capable of work requiring either walking/standing *or* sitting for six hours (Tr. 18, 240-241).  Because the ALJ did not find the need for a sit/stand option, Counsel's reliance on SSR 83-12 and 96-9p for the proposition that the ALJ ought to have specified the intervals at which Plaintiff was

required to change positions is unavailing. 1983 WL 31253, *4; 1996 WL 374185, *7. To the contrary, the ALJ's finding that Plaintiff could stand or walk or sit for up to six hours per eight-hour workday well exceeds the requirements for sedentary work. *See* SSR 96-9p1996 WL 374185, *6. ("sedentary work requires that an individual be able to stand and walk for a total of approximately 2 hours during an 8-hour workday"). The RFC is consistent with the hypothetical question to the VE and the VE's job findings (later adopted by the ALJ) limiting Plaintiff to sedentary work (Tr. 18, 21, 240-241).

### B.  The Step Two Findings

Next, Plaintiff disputes the ALJ's Step Two findings, contending that  the ALJ improperly omitted neuropathy and retinopathy from the "severe" Step Two impairments. *Plaintiff's Brief* at 12-13.

An impairment can be considered "not severe ... only if the impairment is a 'slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience.'" *Farris v. Secretary of HHS,* 773 F.2d 85, 90 (6th Cir.1985)(citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir.1984)); 20 CFR § 416.921(a).  Plaintiff's claim of limitations as a result of neuropathy and retinopathy, if credited, would qualify as "work-related" limitations.  However, the omission of these conditions from the Step Two findings does not warrant remand.  At Step Two, the ALJ found that diabetes mellitus was a severe impairment (Tr. 18).  Plaintiff does not dispute that the conditions of neuropathy and retinopathy were complications of diabetes mellitus.  The inclusion of diabetes mellitus at

-10-

Step Two can arguably be construed to encompass complications of the disease.  Further, even assuming that the ALJ can be faulted for failing to include neuropathy and retinopathy among the "severe" impairments at Step Two, this alone does not amount to reversible error, given that the ALJ acknowledged limitations as a result of neuropathy by restricting Plaintiff to sedentary work and vision problems by precluding work requiring "fine visual acuity"[3] (Tr. 18).  *See Pompa v. Commissioner of Social Sec.,* 73 Fed.Appx. 801, 803,  2003 WL 21949797, *1 (6th Cir. 2003)(unpublished)(a Step Two omission of  "little consequence," provided that the ALJ consider "all impairments, severe and non-severe," in crafting the RFC).

       Plaintiff  tacks on several undeveloped criticisms of the ALJ's opinion onto his "severe impairment" argument.  He states erroneously that the RFC contained no "non-exertional limitations."  *Plaintiff's Brief* at 12.  In fact, the RFC included a number of non-exertional limitations by precluding work involving extreme cold, heat, wetness, and/or humidity; work requiring fine visual acuity; and work involving unprotected areas of moving machinery, heights, ramps, ladders, scaffolding, and uneven ground.  *See* 20 C.F.R. § 404.1569a (iv-vi).  Plaintiff argues  that the "RFC explanation is less than one-page long and makes not one single argument either for/or against . . . the determination."  *Plaintiff's Brief*

---

       [3]However, as discussed below, the ALJ's failure to explain his Step Three findings constitutes reversible error.

13.[4]   However, the medical transcript, only 54 pages long, consists primarily of lab results and conditions unrelated to the disability claim.  The January, 2006 examination reflects the only comprehensive evaluation in the medical transcript.  Although, as discussed below, the ALJ's failure to articulate certain findings constitutes error, he accurately summarized the relevant portions of the transcript and cannot be faulted for the paucity of evidence supporting the disability claim.

### C.  Failure to Consider Entire Record (RFC)

For overlapping reasons, I disagree with Plaintiff's claim that the ALJ "cherry-picked" the record for evidence of non-disability.  *Plaintiff's Brief* at 13.  In fact, the ALJ incorporated most of Plaintiff's claims of exertional and non-exertional limitations into the RFC.  While Plaintiff's claim that he needed to sleep all day everyday was not included in the RFC, not one piece of medical evidence supports his testimony that he needed to sleep all the time.  The ALJ cited January, 2006 examination notes stating that Plaintiff was able to work as a dancer and deliberately refrained from taking insulin in an effort to keep his weight low (Tr. 98).  Counsel also relies on *Sims v. Apfel, supra*, 530 U.S. at 111, for the proposition that the record was not well developed in the administrative opinion.

---

[4]

In contending that the administrative opinion ought to have contained "argument" for or against a disability finding, Plaintiff appears to rely on *Sims v. Apfel*, 530 U.S. 103, 111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000)(plurality)(ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits." However, *Sims* refers to the ALJ's duty to develop such arguments at the hearing rather than in the administrative decision.  *Id.* at 110, 120 S.Ct. 2080.

However, the failure to develop the hearing record, particularly as to Plaintiff's functional

limitations, is more properly attributable to Counsel's own deficiencies.[5]

_____

[5] Plaintiff's Counsel argues that his client received "zero due process" from the ALJ. *Plaintiff's Brief* at 14. However, a review of the hearing transcript indicates that counsel, rather than the ALJ, hampered the case for benefits at the administrative level. Although the ALJ urged counsel to elicit testimony from Plaintiff regarding functional limitations, counsel refused, stating erroneously that because the claim for benefits was based solely on the diagnosis of diabetes, he was not obliged to ask Plaintiff about his exertional and non-exertional abilities, i.e. the ability to lift, carry, walk, stoop, crawl, kneel, etc. (Tr. 235-236). The ALJ noted that as of the hearing date, counsel had not provided a memorandum in support of the position that Plaintiff's diagnosis of diabetes rendered him disabled (Tr. 236). Plaintiff himself offered no testimony regarding exertional or postural limitations, and when asked directly by the ALJ whether he experienced additional work-related limitations aside from unspecified hand and foot numbness, back pain, and vision problems, replied "no" (Tr. 239).

The ALJ (doubtlessly aware that the question of disability as a result of diabetes was premised on physical and/or visual restrictions) closed the hearing by offering to schedule a followup hearing to which counsel stated "I don't want to appear again" (Tr. 246). The ALJ then stated more pointedly "I'm giving you the opportunity [to appear again], " to which Counsel replied "no" (Tr. 246). Abandoning the subtle approach, the ALJ offered counsel one last chance to reconsider, stating if "you feel that you want time to prepare and have another personal appearance I will provide you with that option" (Tr. 247). Counsel once again declined, indicating that he believed that his representation had been sufficient (Tr. 247).

As such, when counsel finally submitted a post-hearing memorandum arguing that Plaintiff's diabetic neuropathy rendered him disabled, he had already squandered any chance of developing the record as to physical limitations required to show disability by (1) failing to elicit testimony regarding such limitations, and (2) refusing the ALJ's multiple offers for more time to prepare a competent administrative case. The memorandum's assertion that Plaintiff experienced disability level vision problems in August, 2009 (two months before undergoing eye surgery) is similarly undermined by counsel's failure to develop his client's testimony regarding vision problems. At the hearing, counsel asked Plaintiff what his vision problem "feels like" to which Plaintiff replied that he could not "see," then supplemented with the contradictory testimony that his eye condition made him "color blind" (Tr. 234). Aside from counsel's "feels like" question, he did not question his client further about his vision limitations, although testimony regarding the frequency and intensity of the vision problems (i.e., was he capable of reading 10 pt. type, 14 pt. type; or, how often and to what extent did he

-13-

While Counsel points out that the ALJ did not address the January, 2006 examiner's statement that "[u]ltimately [Plaintiff] will likely need psychiatric evaluation . . . ." the record contains no other evidence to suggest that Plaintiff ever required, sought, or received mental health counseling or that psychological issues created work-related limitations (Tr. 100). Although prompted by his attorney to discuss "mood swings" and depression at the hearing, Plaintiff did not report symptoms of either condition, stating instead that his ability to concentrate was impeded only by "worry" about whether his child was susceptible diabetes (Tr. 325). While Plaintiff also argues in passing that the ALJ gave short shrift to the treating sources, he does not point to any medical evidence suggesting greater limitations than those found in RFC. While he is correct that "there is no explanation why [hypertensive and proliferative diabetic retinopathy] do not meet the vision listings . . ." he fails to provide any citations to the applicable listings, or statutory or case law to support the claim. *Plaintiff's Brief* at 13.

### D.  Grounds for Remand–Deficient Step Three Analysis

Although not well developed by Plaintiff's counsel, grounds for remand exist. The ALJ found at Step Three that "[t]here are no medical findings that claimant has an

---

become "color blind") were critical in assessing Plaintiff's degree of visual impairment.

Counsel's arguments before this Court center on the ALJ's "failure" to craft an adequate RFC, when in reality, the failure to develop the record was largely attributable to counsel's own decisions at the administrative level. In view of counsel's deficiencies, I find many of his criticisms of the ALJ to be unwarranted and unsavory.

impairment or combination of impairments that meets or medically equals any impairment in the Listing of Impairments" (Tr. 18).  However, the finding is unaccompanied by any citation to a listed impairment.[6]

   *Bledsoe v. Barnhart,* 165 F. App'x 408, 411,  2006 WL 229795, *2 (6th Cir.2006)(unpublished), arguably supports the proposition that an ALJ's Step Three findings need not include a detailed discussion of why the claimant's condition does not meet a listing, so long as the  ALJ's factual findings, taken as a whole, establish non-disability at Step Three. *See Staggs v. Astrue,* 2011 WL 3444014, *3  (M.D.Tenn.2011)(citing *Bledsoe v. Barnhart,* 165 F. App'x 408, 411 (6th Cir.2006))(Sixth Circuit has "implicitly endorsed the practice of searching the ALJ's entire decision for statements supporting his step three analysis").  The Sixth Circuit "has emphasized that there is no 'heightened articulation standard'"at Step Three.  *Snoke v. Astrue,* 2012 WL 568986, *6  (S.D.Ohio 2012)(citing *Bledsoe,* at 411)("[A]n ALJ is not obligated to 'spell out every consideration that went into

------

[6]

   At the time of the ALJ's decision, to show disability as a result of diabetes mellitus under Listing 9.08, Plaintiff was required to show (A) "neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station," (B) "acidosis occurring at least on the average of once every 2 months" or (C) retinitis proliferans which would be analyzed as a separate condition under Listing 2.02.  To show disability as a result of decreased visual acuity and diabetic retinopathy under Listing 2.02, Plaintiff would be required to show vision in his best eye of  20/200 or less. However, beginning on June 7, 2011, diabetes mellitus falls under Listing 9 .00 (Endocrine Disorders). Section 9.00 indicates that endocrine disorders now are evaluated under the listings for other body systems.

-15-

the step three determination'")(punctuation omitted).

However, the administrative decision in this case makes no mention at all of the applicable listings (9.08 and 2.02) or why Plaintiff's condition, as described by the medical transcript, did not meet these listings. While the ALJ accurately summarized the existing medical records, the administrative opinion does not contain any discussion that would allow the reviewing Court to conclude that the evidence was insufficient to show disability at Step Three. In this respect, the present case is similar to *Reynolds v. Commissioner of Social Security,* 424 Fed.Appx. 411, 415, 2011 WL 1228165, *3 (6th Cir. 2011), a recent unpublished Sixth Circuit case in which a remand was granted on the basis that "[n]o analysis whatsoever was done as to whether Reynolds' physical impairments . . . met or equaled a Listing . . . ."

Given the paucity of treating medical records, it is difficult to determine the question of disability based on the limited transcript. While the record suggests that Plaintiff experienced, at least temporarily, disability level eye problems, these records were created in the weeks before cataract surgery and do not establish the duration or degree of his eye problems prior to August, 2009. As noted by the ALJ, the post-surgery treating notes do not provide much illumination into the extent of Plaintiff's vision problems following surgery. As such, I recommend that upon remand, the ALJ either recontact Plaintiff's treating sources for clarification of his condition or, if required, order a consultive examination pursuant to 20 C.F.R. § 416.912(e).

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Doc. #11] be DENIED, and that Plaintiff's Motion for Summary Judgment [Doc. #9] be GRANTED, remanding this for further proceedings consistent with this Report and Recommendation pursuant to the fourth sentence of 42 U.S.C. 405(g).

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

-17-

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date:  September 14, 2012

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on September 14, 2012.

s/Johnetta M. Curry-Williams
Case Manager

-18-